UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LLOYD RANDALL ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-01312 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| TOL, INC., ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM

Defendant TOL, Inc. ("TOL") has filed a so-styled Motion to Dissolve, Alter, or Amend Preliminary Injunction pursuant to Fed. R. Civ. P. 59(e) ("Rule 59 Motion") (Docket No. 48), to which plaintiff Lloyd Randall Anderson filed a Response in opposition (Docket No. 53), and TOL filed a Reply (Docket No. 57). Anderson has filed a Motion to Reschedule Initial Case Management Conference and Renewed Motion for Leave to File a Motion for Partial Summary Judgment (Docket No. 54) ("Motion to Reschedule ICMC and Motion for Leave"), to which TOL filed a Response in partial opposition (Docket No. 58). For the reasons stated herein, TOL's Rule 59 Motion will be denied, the court will reschedule the Initial Case Management Conference, and Anderson's request for leave to file a partial motion for summary judgment will be denied without prejudice.

# BACKGROUND

On February 7, 2013, after receiving written submissions from the parties and conducting a preliminary injunction hearing ("Preliminary Injunction Hearing"), the court granted Anderson's request for a preliminary injunction from the bench. The court entered that

1

preliminary injunction against TOL on the docket on February 8, 2013. (*See* Docket No. 36 ("Preliminary Injunction Order").) On February 28, 2013, the court issued an opinion explaining the basis for the Preliminary Injunction Order. *See Anderson v. TOL, Inc.*, — F. Supp. 2d —, 2013 WL 772055 (M.D. Tenn. Feb. 28, 2013) [Docket No. 44 in this case, associated Order at Docket No. 45].[1] Familiarity with that opinion is assumed.

On March 8, 2013, TOL timely filed the instant Rule 59 Motion, which urges the court to reconsider its previous decision and, as a consequence, to dissolve or modify the injunction. On March 8, 2013, TOL also filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit. (Docket No. 49.) The court takes judicial notice of the fact that, on March 15, 2013, the Federal Circuit deactivated TOL's appeal, stating that "a motion of the type enumerated in Fed. R. App. P. 4(a)(4) has been filed in [the district court] rendering the notice of appeal ineffective . . . ." (*See Anderson v. TOL, Inc.*, Appeal No. 13-1253 (Fed. Cir. filed Mar. 8, 2013), at Entry No. 2.)

## **JURISDICTION**

The parties dispute whether this court has jurisdiction to consider the Rule 59 Motion. Anderson argues that, under *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, No. 2009-1168, 2009 WL 790105 (Fed. Cir. Mar. 25, 2009), *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234 (Fed. Cir. 1986), and *Chemlawn Servs. Corp. v. GMC Pumps, Inc.*, 823 F.2d 515 (Fed. Cir. 1987), the Notice of Appeal divested this court of jurisdiction to address the Preliminary Injunction Order any further. In response, TOL argues

---

[1]The court's February 28, 2013 order also denied without prejudice TOL's Motion to Dismiss or Transfer and denied without prejudice Anderson's Motion for Leave to File Motion for Partial Summary Judgment. (*See* Docket No. 45.)

that Fed. R. App. P. 4(a)(4) authorizes this court to decide the pending motion.

As an initial matter, although styled as a "Motion to Dissolve, Alter, or Amend Preliminary Injunction," TOL's motion is actually a "motion to reconsider," because it does not rely on any intervening factual or legal changes following entry of the Preliminary Injunction Order. *See Gooch v. Life Ins. Co. of Am.*, 672 F.3d 402, 414-416 (6th Cir. 2012). At any rate, as the Federal Circuit appears to have acknowledged in this case, under Fed. R. App. P. 4(a)(4), a notice of appeal of a district court order is not effective until the court has disposed of a timely motion concerning that order filed pursuant to Fed. R. Civ. P. 59. Thus, under a straightforward application of Fed. R. App. P. 4(a)(4), this court must decide the Rule 59 Motion before TOL's appeal can even be effective. Indeed, the court has located one unpublished Sixth Circuit decision that suggests that this approach is the correct one here. *See Barnett v. Cross*, No. 89-2260, 894 F.2d 1336, 1990 WL 7939 (6th Cir. Feb. 2, 1990).[2]

The Federal Circuit authority cited by Anderson does not persuade the court that Fed. R. App. 4(a)(4) is somehow displaced here. First, the Federal Circuit looks to the law of the originating circuit on procedural issues, but none of the cited cases address how the Sixth Circuit would decide this jurisdictional issue. *See Power Controls*, 806 F.2d at 237 (looking to Ninth Circuit); *Chemlawn*, 823 F.2d at 517 (looking to Fifth Circuit).[3] Therefore, the cases are not

---

[2]The parties have not cited any Sixth Circuit authority addressing the relationship among Fed. R. Civ. P. 59 (authorizing motions to reconsider), Fed. R. App. P. 4(a)(4) (rendering appeals ineffective until the district court decides a motion under Fed. R. Civ. P. 59), and 28 U.S.C. § 1292(a) (permitting immediate interlocutory appeals of preliminary injunction orders). Based on its own research, the court has not located any published Sixth Circuit directly addressing this issue.

[3]*Fairchild* involved an appeal from the District of Maine and did not even purport to analyze how the First Circuit would handle the issue presented, let alone the Sixth Circuit.

binding and constitute, at most, persuasive authority.

Second, none of the cases cited by Anderson even addresses the intersection of Fed. R. Civ. P. 59, Fed. R. App. P. 4(a)(4), and § 1292(a), which is the pertinent issue presented here.

Third, even given their limited potential relevance, none of the cases cited by Anderson involves the procedural circumstances presented here. In *Power Controls*, the district court issued a preliminary injunction against the defendant, supported only by a one-sentence explanation from the bench that was not followed by any further findings of fact or conclusions of law. 806 F.2d at 236. The defendant appealed and filed an initial brief to the Federal Circuit, in which it criticized the district court for failing to make necessary findings. 806 F.2d at 238. The plaintiff-appellee, now aware of the deficiencies identified by the defendant on appeal, filed a motion in the district court seeking to "clarify" the basis for the district court's opinion. 806 F.2d at 236-37. The district court granted the motion and, months after it entered the preliminary injunction and after the defendant had briefed its appeal, issued an opinion that essentially plugged the gaps identified on appeal. 806 F.2d at 236-38. Similarly, in *Chemlawn*, the defendant appealed two district court preliminary injunction orders that were not supported by findings of fact or conclusions of law (in violation of Fed. R. Civ. P. 52(a)) and that failed to require a security bond (in violation of Fed. R. Civ. 65). 823 F.2d at 516-18. Four months after the court issued the first of these injunctions and two months into the pendency of the defendant's appeal thereof, the district court issued findings of fact and conclusions of law purporting to justify the injunctions, and finally required the necessary bond. *Id.* at 516. Thus, in both *Power Controls* and *Chemlawn*, which involved serious procedural violations that each district court had endeavored to cure belatedly and retroactively, the Federal Circuit (looking to the law of the

4

relevant circuit court in each case) understandably found that each district court lacked jurisdiction to address the preliminary injunction orders while each appeal was pending. *See Power Controls*, 806 F.2d at 238; *Chemlawn*, 823 F.2d at 518.

In *Fairchild*, which is a three-paragraph, unpublished opinion, the Federal Circuit considered the defendant's appeal for a stay of all proceedings before the District of Maine, which had issued a preliminary injunction against the defendant. 2009 WL 790105, at *1. The Federal Circuit held that it did not have authority to stay district court proceedings unrelated to the preliminary injunction and therefore denied the request for a total stay. *Id.* In *dicta*, it cited *Chemlawn* and *Power Controls* for the proposition that a district court "may not amend the injunction [] or make findings of fact to support its injunction while the injunction is on appeal." *Id.* Given that *Fairchild* is an unpublished summary opinion, that the cited language is *dicta*, and that the cited language provides an over-broad characterization of both *Chemlawn* and *Power Controls* – neither of which addressed Sixth Circuit law or the intersection of Fed. R. Civ. P. 59 and Fed. R. App. P. 4(a)(4) in the first place – the court is not persuaded that *Fairchild* displaces or should be construed as displacing the straightforward application of Fed. R. App. 4(a)(4) here.[4]

Here, the procedural posture of the case does not implicate the concerns that animated the Federal Circuit's decisions in *Power Controls* and *Chemlawn*. In addressing the Rule 59 Motion here, the court is not exercising concurrent jurisdiction with the Federal Circuit over this case; to

---

[4] In *Fairchild*, the Federal Circuit cited the Sixth Circuit decision in *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) for the proposition that, even when a preliminary injunction is subject to an interlocutory appeal, a district court may proceed with the litigation and permit discovery, enter rulings on summary judgment, or hold a trial on the merits. Although *Moltan* does stand for that proposition, this court notes that *Moltan* did not address the intersection of Fed. R. Civ. P. 59 and Fed. R. App. P. 4(a)(4) with respect to a preliminary injunction order.

5

the contrary, the Federal Circuit has deactivated the appeal pending resolution of the Rule 59 Motion, a result which is consistent with *Barnett*. Also, unlike *Power Controls* and *Chemlawn*, this court issued its findings of fact and conclusions of law before TOL appealed, neither party has disclosed its appellate arguments, and it is TOL itself (*i.e.*, the party against whom the preliminary injunction issued) that seeks timely relief from the preliminary injunction before this court under Fed. R. Civ. P. 59. Finally, addressing the timely Rule 59 Motion promotes judicial economy: with respect to the Preliminary Injunction Order, the Federal Circuit and the parties will have a complete record on appeal. Thus, under the circumstances presented here, the court finds that it has jurisdiction to address the Rule 59 Motion.[5]

## **RULE 59 STANDARD**

Under Rule 59, a court may alter or amend an order based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* at 615; *GenCorp*, *Inc. v. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 395 (6th Cir. 2007). However, a motion under Rule 59(e) is not a vehicle for presenting new legal arguments that could have been raised before a judgment was issued. *Roger Miller Music,* 477 F.3d at 395; *see also Leisure Caviar*, 616 F.3d at 616 (movant "cannot use a Rule 59 motion (or for that matter a

---

[5]The court notes that the Sixth Circuit has found that § 1292 does not permit direct appeals of a motion to reconsider. *See Gooch*, 672 F.3d at 414 (finding that defendant who did not appeal initial injunction order could not bootstrap otherwise untimely appeal by appealing denial of motion to reconsider). Here, TOL timely appealed the Preliminary Injunction Order, which the Federal Circuit deactivated pending resolution of TOL's timely Rule 59 Motion. In light of the accompanying order denying reconsideration, the court presumes that the Federal Circuit will simply reactivate TOL's timely appeal of the Preliminary Injunction Order and that this opinion will become part of the record on appeal.

6

post-judgment Rule 15 motion) to raise arguments which could, and should, have been made before judgment issued."); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to reargue a case.")

## ANALYSIS

TOL argues that the court committed several clear errors of law.[6]

### I. Alter Ego/Successor in Interest

As it did at the Preliminary Injunction Hearing, TOL argues that, based on Anderson's Verified Complaint allegations, the court should find that TOL was (and remains) a party to the License Agreement because TOL is an "alter ego" of and/or a successor in interest to Overbreak. (*See* Docket No. 39, Transcript of Preliminary Injunction Hearing ("PI Hearing Trans."), at 23:2-3, 34:11-24, and 128:3-24.) After receiving evidence on this topic through written submissions and live testimony, the court rejected TOL's argument and found that TOL had not shown that it was a party to the Licensing Agreement or otherwise entitled to assert rights thereunder. *See Anderson*, 2013 WL 772055, at *3-*4.[7] Aside from incorporating its previous arguments, TOL identifies no legal authority for its position. TOL simply disagrees with the court's previous evaluation of the evidence presented, which does not support a finding of clear error.

---

[6]Although TOL purports to seek reconsideration on the basis of both "clear error" and "manifest injustice," it has not identified any distinct manifest injustice it allegedly suffered, apart from the consequences of the alleged clear errors. Therefore, the court construes the manifest injustice analysis as subsumed within the court's clear error analysis.

[7]The court also noted that the issue of whether TOL could nevertheless be held liable for Overbreak's conduct under an *alter ego* theory was a separate issue, with respect to which the court expressed no opinion. *Anderson*, 2013 WL 772055, at *4 n.8. That footnote implicitly acknowledged what Anderson argues here: an *alter ego* theory is a fraud-based theory that holds one company liable for the acts of another, but it was not developed to permit the liable entity to assert rights on behalf of the "sham" entity.

**II.     Standing**

Without citation to any legal authority, TOL argues that Anderson lacks standing to assert any claims against TOL. The court already considered this argument and rejected it for purposes of the Rule 65 inquiry. Again, TOL simply disagrees with the court's ruling and cites no authority compelling a different result. This does not support a finding of clear error.[8]

**III.    Patent Validity and Infringing Activity**

TOL argues that the court committed clear error in concluding that TOL's activity was infringing and that it threatened to continue infringing the asserted patents. Essentially, TOL argues that the court (1) should not have presumed that the patent was valid; and/or (2) improperly failed to perform a two-step claim construction analysis.

    **A.     Patent Validity**

The parties dispute whether the court should have presumed that the Patents were valid. For the first time, TOL cites *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009), a case in which the Federal Circuit sought to reconcile lines of conflicting precedent concerning the issue of validity at the preliminary injunction stage. In *Titan*, the Federal Circuit reaffirmed that a "patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Id.* (citing *Canon Comp. Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)). It explained as follows:

---

[8]Because the court's decision rested on the patent infringement claim, the court did not explicitly address whether Anderson likely had standing to assert the remaining claims. Thus, for purposes of the instant Rule 59 Motion, the court need not address the standing issue related to those claims. At any rate, notwithstanding the court's findings for purposes of Rule 65, TOL is without prejudice to re-assert its standing challenge to Anderson's patent infringement claims at an appropriate stage in these proceedings, supported by sufficient legal authority and evidence.

> Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue.
>
> If, instead, the alleged infringer responds to the preliminary injunction by launching an attack on the validity of the patent, *the burden is on the challenger to come forward with evidence of invalidity*, just at it would be at trial. The patentee, to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument.

*Titan*, 566 F.3d at 1377 (emphasis added). If both parties have presented evidence concerning validity, the district court must make the following inquiry:

> [T]he trial court first must weigh the evidence both for and against validity that is available at this preliminary stage in the proceedings. Then, as explained in *New England Braiding v. A.W. Chesterton, Co.*, if the trial court concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit, it necessarily follows that the patentee has not succeeded in showing it is likely to succeed at trial on the merits of the validity issue. 970 F.2d at 883.

*Titan*, 566 F.3d at 1379. In terms of the likelihood of success factor, *Titan* also explained that the district court's role at the preliminary injunction stage is to "determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Id.* at 1380.

With respect to the validity issue, TOL plainly should have brought the *Titan* standard to the court's attention earlier. Regardless, analyzing Anderson's patent infringement claims under *Titan* does not change the result, because (as the court previously found) TOL failed to present evidence of invalidity, and the record evidence otherwise supported a finding of validity. Specifically, TOL had previously argued that, based on a strained interpretation of Anderson's

9

Verified Complaint, Anderson's own verified allegations constituted evidence that the Patents were invalid. According to TOL, the Verified Complaint established that, at least according to Anderson, the Patents require additional undisclosed proprietary information to practice, which, if true, would violate the complete disclosure requirements of 35 U.S.C. §§ 112 and 328, thereby raising a substantial question concerning the Patents' validity.

The court rejected this argument, which is not persuasive for several reasons. Although Anderson did allege that Overbreak and/or TOL misused Anderson's confidential information (*see, e.g.*, Verified Complaint ¶¶ 4-5), it does not follow that this unspecified "confidential information" necessarily related to the validity of the Patents. Indeed, the confidentiality provisions of the License Agreement related to, *inter alia*, "information about each party's business organization, . . . price information, customer names and addresses and other business information relating to the manufacturing or sale of the Products including but not limited to sales volume, marketing plans and strategies among other things," as well as "trade secrets, executive summaries, . . . data, know-how, designs, sketches, photographs, drawings, . . . ideas, improvements, [and] methods." (*See* License Agreement ¶ 19(a).) Indeed, Anderson testified at the Preliminary Injunction Hearing that he often shared "ideas" with Overbreak related to the HoverDisc toy (*see, e.g.*, PI Trans. at 68:18-19 ("[A]ll throughout the entire history of our original agreement, I shared every idea I had.")), including "ideas for improving the materials and the configuration of the HoverDisc itself," as well as discussions with Overbreak's "product development team about potential ideas, not just for improving the IP but also extending the line, the Hover[Disc] line." (*Id.* at 133:23-134:3.) Anderson also indicated that, in connection with the 2012 negotiations for a potential new agreement with TOL, he had "new ideas for improving

10

the HoverDisc and also for extending the line" (*id.* at 120:18-21), which he refused to share with TOL absent a new agreement (*id.* at 121:4-5 ("Why would I give something to someone I didn't have a deal with?")). In light of these types of disclosures, Anderson's sworn claim for breach of confidentiality does not constitute "evidence" that the Patents themselves are necessarily invalid.

Furthermore, at the Preliminary Injunction Hearing, TOL did not elicit any evidence of invalidity, nor did it even discuss this purported basis for invalidity during oral argument. TOL did not and has not presented any evidence that Anderson's Patents *actually* require additional proprietary information to practice. Indeed, if that were the case, TOL would know it, since it was manufacturing HoverDiscs (likely illegally) from approximately 2007 to 2012. Thus, TOL has not presented evidence of invalidity; instead, at least at this point, its invalidity challenge is essentially based on the *ipse dixit* of counsel.

Moreover, TOL is essentially talking out of both sides of its mouth, as it has in multiple respects during the course of these proceedings. Before the Preliminary Injunction Hearing, TOL argued in multiple submissions to the court that producing and selling the HoverDisc premised on Anderson's Patents "*does not require confidential information*." (Docket No. 23, Resp. in Opp. to Mot. for PI, at p. 16 ("[P]roducing and selling the toy balloon *does not require confidential information* because how to make and use the invention, including the best mode for doing so, *are generally available to the public through the issued patents*." (emphases added)); *see also* TOL Mem. in Support of Mot. to Transfer at p. 8 (same).) At the same time, in its Response in opposition to the Motion for Preliminary Injunction – in which TOL had already stated that manufacturing the Patents required no confidential information – TOL also purported

to challenge the Patents' validity on the basis that they *did require* additional undisclosed information to practice. (*See* Docket No. 23 at pp. 13-16.) TOL cannot take both competing legal positions and then credibly argue that this court committed "clear error" by accepting one representation over the other for Rule 65 purposes.

Finally, as set forth in the court's previous opinion and as reiterated in the next section of this opinion, the court construed and continues to construe TOL's written challenges to the Patent's validity as disingenuous.

In sum, TOL never displaced the presumption of validity with contrary evidence, as required by *Titan*. Moreover, even if one could interpret TOL as having presented some minimal quantum of evidence challenging validity, the record discredited that evidence and demonstrates that TOL did not show that, by a preponderance of the evidence, it could provide clear and convincing evidence of invalidity at trial.

## B. Patent Infringement

TOL also argues that the court erred by failing to conduct a claim construction analysis to determine whether TOL's conduct was actually infringing the Patents.

The court already rejected TOL's purported infringement challenge in its earlier opinion, *see Anderson*, 2013 WL 772055, at *8, but the court's conclusion bears repeating: based on the evidence presented by the parties, the court regards this argument as disingenuous and hypocritical. Overbreak bargained for the right to use the Patents to manufacture HoverDiscs, and the record establishes that Overbreak in fact utilized that technology to produce HoverDiscs on an exclusive basis. From approximately 2007 forward, TOL (operated by many of the same officers as Overbreak) continued to manufacture HoverDiscs utilizing the Patents, purportedly

12

under the License Agreement. Although TOL did not abide by the License Agreement's payment terms, in 2012 TOL remitted a royalty check to Anderson purporting to reflect unpaid royalties due to Anderson from approximately 2007 to 2012, based on sales of the HoverDisc during that time frame. In the Summer and Fall of 2012, TOL representatives – essentially the same former Overbreak officials with whom Anderson had previously interacted – spent months attempting to negotiate a new License Agreement to continue to exploit the Patents as part of a prospective 2013 "re-launch" of the HoverDisc. When negotiations broke down, TOL suddenly switched gears and claimed that the License Agreement between Anderson and Overbreak had never expired, that TOL was a party to that agreement, and that TOL retained an exclusive right to continue to exploit the Patents in manufacturing HoverDiscs.

Even in the context of this litigation, TOL continued to maintain that the License Agreement never terminated and that it could continue to exploit the Patents pursuant to the terms of that agreement. (Docket No. 23 at pp. 7-10.) Furthermore, TOL represented to this court that, had Anderson not filed suit first, TOL was prepared to sue *Anderson* to obtain declaratory relief that the License Agreement remained in force. (*See* Docket No. 23, Ex. 1, Decl. of Dayne Sieling ¶ 12 ("We thought Mr. Anderson's claims in October 2012 that the Agreement was terminated were improper, and TOL intended to bring an action for declaratory relief immediately after the 2012 holidays.").) TOL's president, Dayne Sieling, also averred as follows:

> . . . TOL has been conducting its business for many years with the understanding that we held a valid a license for the patents in question. *If the license was terminated, we would not have continued to market, sell, or manufacture[] the product*.

(*Id.* ¶ 6 (emphasis added).) All of these actions and representations indicated that TOL believed

13

that the Patents were valid, that it required a license to exploit them, and that any other entity (such as Anderson) seeking to market the Patents would be infringing *TOL*'s interest in the Patents.

However, again taking both sides of the same issue, TOL also argued that Anderson could not prevail because he had not presented a claim construction analysis showing that, even if TOL did not possess a license, its activity would not have infringed the Patents. (Docket No. 23 at pp. 18-19.) This legal position was entirely at odds with TOL's pre-litigation conduct and its simultaneous sworn representations in *this* litigation (indeed, in support of the same response brief) that it held an exclusive license to exploit the Patents. Moreover, TOL presented no evidence supporting this alternative argument, except to point out that Anderson had alleged that TOL was producing HoverDiscs of inferior quality, an issue on which Anderson testified at the hearing. As the court previously found, the inferior quality of the HoverDiscs (if true) threatened to hurt the value of the Patents. However, the court was not persuaded that TOL had presented a genuine challenge as to whether its conduct would infringe the Patents if it did not have a license. *See Anderson*, 2013 WL 772055, at *8. Again, TOL cannot take competing positions on the same issue, fail present to any evidence supporting one of the positions, and then fault the court for adopting the other position – which, at any rate, was supported by evidence in the record.

TOL, citing *Medtronic Inc. v. Boston Sci. Corp.*, 695 F.3d 1266, 1274 (Fed. Cir. 2012), also argues that the court erred in finding that continued manufacture and sale of the HoverDisc would infringe the Patents, because "a licensee is not automatically an infringer if not for its status as a licensee." (Docket No. 48.) TOL has improperly raised this argument for the first

time after the court issued the Preliminary Injunction Order. Regardless, *Medtronic* asserted a narrow holding premised on peculiar procedural circumstances that are not present here. In *Medtronic*, a medical device manufacturer (Medtronic) sublicensed a patent to manufacture a particular heart device. 695 F.3d at 1269. The sublicense agreement specifically reserved Medtronic's right to challenge the validity and enforceability of that patent. *Id.* at 1269. Medtronic paid the required royalties into escrow, but, pursuant to its contractual reservation of rights, brought a declaratory judgment action against the licensor challenging the patent's validity and seeking a declaration of non-infringement. *Id.* at 1269-1270. Because of the sublicense agreement, the licensor could not counterclaim for infringement, thereby complicating the analysis as to which party bore the burden of persuasion at trial. *Id.* at 1270. The Federal Circuit held that, "in the limited circumstance when an infringement counterclaim by a patentee is foreclosed by the continued existence of a license, a licensee seeking a declaratory judgment of noninfringement and of consequent liability under the license bears the burden of persuasion." *Id.* at 1274. In relevant part, the court remanded the case for further proceedings on Medtronic's request for a declaration of non-infringement. *Id.* at 1275-76.

It is unclear to the court how *Medtronic* favors TOL's position here. Here, Anderson (the alleged patentee) has sued TOL (the alleged infringer), affirmatively alleging infringement by TOL. Also, the sublicense agreement at issue in *Medtronic* specifically reserved to Medtronic the right to challenge the validity and enforceability of the patents, whereas the License Agreement at issue here contained no such terms. Moreover, as the court has explained, the record contains substantial evidence that TOL itself believed that the HoverDisc exploited the Patents, that TOL retained an exclusive right to do so, and that any entity without such a license

15

would have infringed the Patents. Even assuming that TOL is not precluded from challenging the validity of the Patents in this litigation, it did not present, and still has not presented, any viable and properly supported challenge in that regard, regardless of its potential status as a licensee.

In sum, TOL has not shown that, under the circumstances, the court erred by failing to conduct a claim construction analysis at the Rule 65 stage.

C. **Scope of the Injunction**

Finally, in passing, TOL complains that the injunction is overbroad because it allegedly covers conduct relating to Anderson's breach of contract and breach of confidentiality claims, claims on which the court injunction was not premised. (*See* Docket No. 48 at p. 2.) This complaint is unsupported for several reasons: (1) TOL has not identified which specific aspects of the injunction it believes are overbroad relative to the basis for the Preliminary Injunction Order; (2) TOL has not identified any specific business activities that it believes are improperly restrained by the injunction – *i.e.*, it has not shown that the injunction actually restrains any legitimate business activities unrelated to the Patents; and (3) TOL has not even offered any proposed modification to the Preliminary Injunction Order.[9] As with several of TOL's other arguments, TOL's complaint is essentially based on statements of counsel, not evidence. In light of these considerations, TOL has not shown that the court committed clear error concerning the scope of the injunction.

---

[9]TOL may be suggesting that restraining it from utilizing "confidential information" as defined in the License Agreement is unfair because the court preliminarily found that TOL was not an assignee of that agreement. If TOL indeed was not a party to that agreement, it is not clear how it could lawfully have obtained any such information from Overbreak in the first place.

16

### III. Anderson's Motion

#### A. Request for Leave to File a Partial Motion for Summary Judgment

The court previously denied without prejudice Anderson's request for leave to file a motion for partial summary judgment on several issues. *See Anderson*, 2013 WL 772055, at *9. Anderson has renewed the motion for leave to file a motion for partial summary judgment on the specific issue of whether TOL has a valid license to the Patents, arguing that he is having difficulty marketing the Patents without a clear declaration that TOL has no license to them. As the court's previous opinion explained, the evidence in the record to this point establishes that TOL does not possess a valid right to exploit the Patents. The court is highly skeptical that, even after discovery, TOL will be able to prove otherwise. Nevertheless, the court is persuaded by TOL's argument that resolving whether it has a license to the Patents is intertwined with multiple issues on which it is entitled to discovery, including whether Anderson is the appropriate party to enforce the Patents against infringement. Thus, even if the court granted leave for Anderson to file the requested motion, TOL has stated that it would demand discovery on that issue under Fed. R. Civ. P. 56(d), which the court would be obligated to grant under the circumstances presented. Thus, notwithstanding the court's skepticism, the court finds that the issue is not ripe for final determination at this stage.

#### B. Request to Reschedule Case Management Conference

TOL has not responded to Anderson's separate request to reschedule the Initial Case Management Conference, nor has it contested that the case may proceed despite the appeal of the Preliminary Injunction Order. *See Moltan*, 55 F.3d at 1174; *see also Zundel v. Holder*, 687 F.3d 271, 282 (6th Cir. 2012). Both parties have sought expedited resolution of this case, contending

that further delay in declaring their respective interests (or lack thereof) in the Patents at issue is causing them harm. Under the circumstances, both parties would seem to benefit from an expedited resolution of this case.

Therefore, the court will reschedule the Initial Case Management Conference. In advance of that conference, the parties should confer as to whether an expedited schedule is practicable and warranted here. If so, the parties should seek to agree on expedited pre-trial deadlines that will warrant an early trial date.

## CONCLUSION

For the reasons stated herein, TOL's Rule 59 motion will be denied. Anderson's Motion to Reschedule and for Leave will be granted in part and denied in part. The court will reschedule the initial case management conference, and the court will deny Anderson's motion for leave to file a motion for partial summary judgment without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge